UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE UNITED STATES OF AMERICA   :     Docket No: 06-121 (JR)
                                   :
                  v.              :
                                   :
ERICK C. MCNAIR,                :
      also known as "Nut" or "Peanut"   :

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

At sentencing this case poses a single question: whether the defendant Erick McNair, who was associated with a violent narcotics trafficking criminal enterprise, who joined other members of that enterprise and wielded two guns to help accomplish three robberies and a double carjacking, who has expressed no remorse for his conduct, who has a significant criminal past, and who has been the beneficiary of a favorable plea bargain, should receive further leniency at sentencing.   The government submits that the answer to this question is "no."   The government urges the Court, accordingly, to impose the maximum sentence permitted by law: five years in prison to be served consecutively to other sentences that McNair is currently serving.

I.  Procedural Background

On May 9, 2006, a twelve count indictment was returned against McNair charging him with one count of conspiracy to commit armed carjacking, in violation of 18 U.S.C. §  371, one count of possession of a firearm (9mm Sturm Ruger semi-automatic pistol) during and in relation to a crime of violence (that being the conspiracy to commit armed carjacking), in violation of 18 U.S.C. § 924(c)(1)(A), two counts of unlawful possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §922(g)(1), two counts of possession of a firearm in a school zone (Taft Special Educational Center), in violation of 18 U.S.C. § 922(q)(2)(A), two counts of interstate transportation of stolen motor vehicle, in violation of 18 U.S.C. § 2312, two counts of unauthorized

use of a vehicle, in violation of 22 D.C. Code §3215(d)(1), and two counts of destroying property, in violation of 22 D.C. Code §303. McNair, who was otherwise serving a sentence in Maryland, was brought to this jurisdiction by a writ of prosecution. He had his initial appearance before the Court on June 15, 2006, and was ordered held without bond. On October 6, 2006, the defendant entered a guilty plea to conspiracy to commit armed carjacking, in violation of 18 U.S.C. § 371. This crime carries a statutory maximum penalty of not more than five years in prison.

## II.  Factual Background

The indictment returned against McNair focuses on three robberies and a double carjacking that occurred at an Amoco (now BP) Station at 4501 Eastern Avenue in Mount Rainier, Maryland, at about 7:00 p.m. on January 2, 2003. That incident itself sprang from a long simmering rivalry between members of the Taft Terrace Crew, a criminal enterprise based in the Taft Terrace neighborhood in upper northeast, Washington, D.C., and other drug dealers based in Mount Rainier, Maryland. Friction developed between members of the Taft Terrace Crew and some of the drug dealers in Mount Rainier because the Taft Terrace Crew was aggressively trying to expand its drug-based business to Mount Rainier.

Two of the established drug dealers in Mount Rainier were Delonta Jackson, known as "Fats" or "Fat Lontay," and John Crawford, known as "John-John." Both trafficked in crack cocaine and dealt frequently at the Amoco Station, a relatively lucrative market that some members of the Taft Terrace Crew coveted. Jackson was known to drive a blue Lincoln Town Car, and Crawford was known to drive a black Cadillac.

In the late afternoon or early evening of January 2, 2003, Darryl Woodfork, a leading member of the Taft Terrace Crew, drove by the Amoco Station in Mount Rainier and spotted Jackson and

Crawford and the cars – the blue Lincoln Town Car and the black Cadillac Concourse – with which they were associated. With Woodfork was DeCarlos Moore, the brother of his then-girlfriend (now wife) Akia J. Schools. Woodfork and Moore were in a black Ford Taurus SHO that belonged to Woodfork. Moore had an unloaded and inoperable semi-automatic pistol. Woodfork had a loaded Model P89 Ruger 9mm semi-automatic pistol with a twenty-five round extended magazine.

Woodfork and Moore discussed robbing and carjacking Jackson and Crawford. Woodfork knew they were drug dealers and believed they were likely to have guns, drugs, and money, and further thought that robbing and carjacking them would inure to the benefit of those from the Taft Terrace Crew who wanted to secure the Amoco Station as a location to deal crack cocaine. In search of additional manpower for the robberies and carjackings, Woodfork and Moore drove to the nearby Taft Terrace neighborhood. In the area of 22nd and Newton Streets, N.E., they spotted and met with Erick McNair ("Nut" or "Peanut") and Simmeon Williams ("Sim"), both of whom were closely associated with members of the Taft Terrace Crew. Woodfork told McNair and Williams that Jackson and Crawford were at the Amoco Station. He suggested robbing them and taking their cars. McNair and Williams, who had committed robberies together in the past, agreed to join Woodfork and Moore in the venture.

McNair and Williams got in Woodfork's black Ford Taurus with Woodfork and Moore. McNair was armed with a silver-colored Model P85 Ruger 9mm semi-automatic pistol. The four drove up 22nd Street to the vicinity of the Amoco Station, where they saw Crawford and his black Cadillac Concourse and Jackson and the blue Lincoln Town Car. Woodfork parked in the cul de sac on 21st Street, located near the Amoco Station. He gave his black 9mm pistol with the extended magazine to Williams. Each now armed, McNair, Willams, and Moore stepped out of Woodfork's

car. Woodfork drove to the Amoco Station, and parked near the air pumps, a vantage point that afforded him a view of Jackson and Crawford.

McNair, Willams, and Moore gathered behind a fence near the Amoco Station. So that his hands would be free to search and rob the victims, Williams gave the gun he had gotten from Woodfork to McNair, who then had two guns. Moore had his inoperable and unloaded semi-automatic pistol. The three put on face masks and walked onto the grounds of the Amoco Station. The plan was for McNair, armed with two pistols (his own and Woodfork's), to force Crawford and Jackson to the ground while Williams searched them. Moore, armed with his own gun, was to assist and take one of the cars.

The robberies and carjackings went largely as planned. McNair and Williams approached the three victims – Crawford, Jackson, and Corey Rious – who were standing together near the black Cadillac and the blue Lincoln. McNair pointed guns at them and ordered them to lie face down on the ground. Crawford, Jackson, and Rious did as they were told. DeCarlos Moore jumped in Crawford's Cadillac, which had the keys in the ignition and the engine going, and drove from the Amoco Station to the Taft neighborhood. Simmeon Williams began to search Jackson and Rious, taking a distinctive Avirex jacket and money from Jackson, and a wallet containing money, a rent check, and identification cards from Rious. McNair stood over Crawford, who removed $100.00 from his pocket, which McNair took. Williams and McNair then got into the blue Lincoln Town Car. With McNair at the wheel, they drove into the Taft Terrace neighborhood. Woodfork, who had watched the robberies and carjackings from his black Ford Taurus, followed suit.

Joined by another member of the Taft Terrace Crew, Duane Sanders ("Squeaky"), the conspirators briefly met in an alley in the Taft Terrace neighborhood, where they began to search the

blue Lincoln and the black Cadillac. Concerned, however, that the robbery and carjacking victims might find them in the Taft neighborhood, they moved the cars to Fort Lincoln, a nearby neighborhood that afforded them a bit more security and that served as the residence for Sean Wolfe ("J.J." or "Six"), a ranking member of the Taft Terrace Crew. Woodfork, who was subject to court-ordered electronic monitoring and an 8:00 p.m. curfew, departed for his home in Hyattsville. He called Vernon McKenzie, another member of the Taft Terrace Crew, and asked him to protect his interests by joining the others in the search of the Cadillac and Lincoln.

McNair and Williams removed the radio and CD player from the blue Lincoln, as well as a baby's car seat. The Cadillac also was searched (by Williams, Vernon McKenzie, and Duane Sanders). From the Cadillac the conspirators removed two television screens, from the steering wheel and a visor, respectively, and a DVD player from the trunk. The cars having been searched, the conspirators went their separate ways. Sanders left in the stolen Cadillac, and was followed by Moore. After stashing the Cadillac, Sanders and Moore returned to the Taft neighborhood, where Vernon McKenzie, in his black Chevy Suburban, gave Moore a ride to the subway station. McKenzie then drove McNair and Williams to Woodfork's home in Hyattsville, where McNair returned Woodfork's gun to him. McKenzie then dropped off McNair and Williams by the stolen blue Lincoln.

The crime victims, being criminal themselves, did not go out of their way to report the crimes or to assist authorities in the apprehension of the suspects. John Crawford went to the police that night but was unable to convince them that he had in fact been victimized. Delonta Jackson waited to call the police until the next morning, and gave a false account of what had transpired. He wanted revenge on his own terms, and his motivation in calling the police was simply to validate an

insurance claim. Corey Rious, who became a victim only because he happened to be with Crawford and Jackson, never notified the police.

Police recovered John Crawford's black Cadillac from the street in Hyattsville on January 4, 2003, two days after it had been stolen. The police reports note damage to the steering wheel, where one of the television screens had been installed. Crawford estimated the value of the items stolen from his car at $2,500.00. The blue Lincoln, titled to Obral Jean Vance, the mother of Delonta Jackson's girlfriend, was recovered on January 5, 2003, when members of the Takoma Park Police Department, as previously noted, stopped the car with Erick McNair behind the wheel. The radio/CD player had been removed from the dashboard but the car, while trashed, was otherwise undamaged.

### III. Government's Sentencing Recommendation

As noted at the outset of this memorandum, the government recommends that the Court sentence McNair to five years in prison, the maximum term authorized by law, and that this sentence be run consecutively to other sentences McNair currently is serving. This recommendation is premised upon the government's consideration of five factors. The first factor is the strength of the government's evidence against McNair. The second factor is the nature of the offense he committed. The third factor is McNair's criminal history. The fourth is the lack of remorse demonstrated by McNair. The fifth factor is the danger to society that McNair represents as a willing associate of a violent street gang, and the need – through the sentence that is imposed – to deter similar gang violence.

### A.    Strength of the Government's Case

The government urges the Court, in imposing sentence in this case, to be mindful of the

-6-

strength of the available evidence against McNair had he chosen to go to trial. The evidence, simply, was overwhelming. Apart from McNair, every one of the conspirators who participated directly in the robberies and carjackings – Daryl Woodfork, Simmeon Williams, and DeCarlos Moore – signed a plea and cooperation agreement with the government. Each and every one of those conspirators was available and would have testified at any trial about McNair's role in the conspiracy. Moreover, those members of the Taft Terrace Crew who joined the effort to search the carjacked cars – Vernon McKenzie, Duane Sanders, and Damon McKenzie – also signed plea and cooperation agreements with the government. Accordingly, they too would have been witnesses against McNair had he chosen to go to trial.

The testimonial proof about McNair's role in the conspiracy, offered by each of his fellow conspirators, thus would have been exceedingly strong. That proof aside, the Court also is advised that McNair was stopped and arrested in the blue Lincoln Town Car three days after he obtained that car in the carjacking on January 2, 2003. The arrest of McNair occurred, more specifically, at about 1:22 a.m. on Sunday, January 5, 2003. On that date and at that time, Private Nick Carter of the Takoma Park Police Department was on routine patrol when he noticed the blue Lincoln traveling at a high rate of speed on Eastern Avenue. He ran the tag and learned that the car was stolen. Private Carter pulled the Lincoln over. At the wheel was McNair, who was arrested. Recovered from McNair's waistband, in a search incident to arrest, was a loaded 9mm Sturm Ruger pistol – one of the two guns that McNair used to accomplish the robberies and carjackings on January 2, 2003. From his right pants pocket officers recovered $179.22 in cash, a small bottle of PCP, and seven bags of crack cocaine.

McNair was detained following his arrest and subsequently was charged in the Circuit Court

of Montgomery County with a variety of offenses.  On March 3, 2003, he pled guilty to one count

of possession of a handgun after being convicted of a felony (he was convicted of possession with

intent to distribute cocaine in Prince George's County on or about January 19, 2001), and a second

count of felonious possession of cocaine.  Thus, the government's proof at any trial would have

included evidence that three days after the carjackings, by his own admission made during the course

of a guilty plea, McNair was stopped while driving one of the cars – the blue Lincoln Town Car –

taken during the carjackings, and had in his possession one of the two guns he used during the

carjackings.    In sum, and to reiterate, the case against McNair had he chosen to go to trial was

overwhelming, and the government's decision to extend him a plea offer was based on factors

wholly unrelated to concerns about its ability to carry its burden of proof.  The government had no

such concerns – none – and we have summarized some of our proof so that the Court, in imposing

sentence, will be able to appreciate the magnitude of the break that McNair already has received

through the plea bargaining process.  By any measure, he received a sizeable break, and he should

receive no more from the Court in the way of leniency at sentencing.

     B.    <u>Nature and Circumstances of Offense</u>

     A second factor influencing the government's sentencing recommendation is the nature and

circumstances of the offense at issue.  The starting point here is the conspiracy in which McNair not

only participated but played a lead role.  McNair joined the conspiracy willingly.  Robbing several

individuals at gunpoint and then stealing two cars was not a concept that gave him even momentary

pause.  He had robbed a gunpoint before.  On this night, like many other nights, he had his gun – a

9mm semi-automatic pistol – with him.  He was present when the plans for the criminal venture were

rapidly formulated and developed.  Those plans in place – the agreement to commit crime that is the

foundation for every criminal conspiracy – McNair and fellow conspirators went forward with them at once.

McNair and other conspirators drove from the Taft Terrace neighborhood to the Amoco Station on Mount Rainier, Maryland, a short drive of just a few blocks. They spotted their intended robbery victims and the cars they intended steal. Not far from the Amoco Station, three of the conspirators, including McNair, got out and prepared to commit the robberies and carjackings. Their faces concealed, they walked onto the lot of the Amoco Station. Armed with two pistols, one in each hand, McNair approached John Crawford, DeLonta Jackson, and Corey Rious. He pointed the pistols at them, ordered them to the ground, and told them to empty their pockets. They complied. The victims subdued, conspirator DeCarlos Moore jumped in Crawford's Cadillac and drove from the Amoco Station to the Taft neighborhood. McNair and conspirator Simmeon Williams robbed Crawford, Jackson, and Rious before driving off in the blue Lincoln Town Car that once had belonged to Jackson. It was McNair who commandeered that car and who drove it into the Taft Terrace neighborhood. Woodfork, who had watched the robberies and carjackings from his black Ford Taurus, followed. Members of the conspiracy, then searched the cars, damaging and taking property of value from both.

The common backdrop for the robberies and carjackings committed by McNair and his coconspirators was their association with a violent narcotics trafficking criminal enterprise based in the Taft Terrace neighborhood. That enterprise was known by various nicknames, one of which was the Taft Terrace Crew. Members of that enterprise, over the years, were responsible for numerous crimes of violence committed in furtherance of some of the goals of the enterprise – to protect its "turf," to promote its reputation, and to retaliate against and take advantage of its rivals. The

robberies and carjackings at issue in this case thus were far from an isolated event. Quite to the contrary, they were part of a string of organized violent crimes committed over the course of time by members and associates of the Taft Terrace Crew. The defendant's ready willingness to participate in the carjacking conspiracy thus should serve as a signal to the Court that McNair engaged in and supported criminal activity on a much broader scale. That aside, the nature and circumstances of the conspiracy in which the defendant admittedly took part alone merits severe punishment.

C.     Criminal History

McNair's guilty plea in this case represents his fourth felony conviction stemming from three separate criminal cases in the last five years. The two cases leading to his three prior convictions may be succinctly summarized, as follows:

2003 Felon in Possession of a Handgun and Felony Possession of Cocaine. On March 3, 2003, in the Circuit Court of Montgomery County, Maryland, in Criminal No. 97165, McNair entered a guilty plea to one count of possession of a handgun after being convicted of a felony (he was convicted of possession with intent to distribute cocaine in Prince George's County on or about June 29, 2001), and a second count of felonious possession of cocaine. That same day he was sentenced to five years for the handgun offense, and received a two year concurrent sentence for the drug offense.

2001 Possession with Intent to Distribute Cocaine. On June 29, 2001, in the Circuit Court for Prince George's County, Maryland, in CT 01-0080X, McNair was convicted of possession with intent to distribute cocaine, possession of cocaine, and possession of marijuana. He was sentenced to ten years in prison, with five years suspended, and upon his release from prison on November 18, 2002, was placed on probation for five years. On April 23, 2004, as a result of his new conviction in Montgomery County, McNair's probation was revoked and he received an additional two year sentence to be served consecutively to his Montgomery County sentence.

D.     Lack of Remorse

McNair has not demonstrated any remorse for his conduct or for the victims of that conduct. In this regard, the government asks the Court to recall McNair's statement at the time of his guilty

-10-

plea that one of the reasons he went forward with the robberies and the carjackings was his quick cost/benefit analysis that the victims – being drug dealers – were unlikely to report the crime to the police.  McNair was not concerned for his victims at the time of the offense, and he is most decidedly not concerned for them now.  His sole concern is for himself, and for minimizing his time in prison.

The lack of remorse McNair has displayed suggests that deterrence and retribution, not rehabilitation, should be the primary objectives of the sentence that this Court imposes.  The government advises the Court, additionally, that McNair was given opportunity to debrief and to cooperate with the government in ongoing investigations.  He declined this opportunity which, of course, was his right.  He did not want to talk with law enforcement officers.  He wanted to remain a "soldier."  He simply wanted a plea offer and, thereby, to limit his sentencing exposure.  As it turned out, he received such an offer, but the decision to extend that offer decidedly did not turn on any concern about the strength of the government's case or any credit that McNair had earned.  Now McNair is hoping that the Court will deem him worthy of further leniency.  No such leniency is warranted.  Having accepted the sentencing risk that his guilty plea represents, he cannot now be heard to complain about the severity of the punishment he receives.

Beyond his complete lack of remorse, McNair in this case has exhibited a defiance for the criminal justice system and the rule of law.  Some sense of that defiant and unrepentant attitude may be gleaned from his conduct when interviewed by members of the Pretrial Services Agency relative to his initial appearance before the Court on June 15, 2006, when booked by the police on the charges in the indictment on June 23, 2006, and in when interviewed by the Probation Officer charged with preparation of the Presentence Investigation Report on October 18, 2006.  Here is a

-11-

summary of McNair's conduct on those three occasions:

> Statements to PSA Representatives on June 15, 2006.  Relative to McNair's initial appearance and arraignment on June 15, 2006, Vaughn Wilson, a representative of the Pretrial Services Agency, attempted to interview McNair, who declined to be interviewed. A report was nonetheless generated, and will be in the Court's file.  We invite the Court to examine the report. The report summarizes McNair's criminal record, available from computer data bases, but indicates that McNair declined to answer all other question save one – McNair said he was a United States citizen but did not have a passport.  He refused to provide information about his community ties (place of birth, time in D.C. area, marital status, children, etc.), address, employment, education, and health.

> Statements During Booking on June 23, 2006.  Pursuant to an Order issued by Magistrate Facciola, McNair was booked on June 23, 2006.  During booking, McNair refused – like he did when interviewed by a representative of the Pretrial Services Agency – to answer questions.  A skeletal P.D. 163 was prepared based on biographical information available from other data bases.   The detective who handled the booking procedure reported that McNair was rude and uncooperative throughout the process.

> Statements During Presentence Investigation Interview on October 18, 2006.  After McNair entered his guilty plea, his case was referred to the United States Probation Office so that a Presentence Investigation could be conducted and a Presentence Report prepared.  The case was assigned to Probation Officer Sherry Brandon.  Ms. Brandon interviewed McNair on October 18, 2006.  As is reflected in Ms. Brandon's report, McNair was hardly forthcoming or cooperative when interviewed.  Instead, he provided as little factual information as he could, and he never expressed any remorse either for his own conduct or for the victims of his conduct.  See Presentence Investigation Report at p. 7, ¶ 20, and p. 13, ¶ 56.  McNair thus continued to display the defiant posture that he displayed when, many months earlier he was booked on the charges the grand jury leveled against him and when he had his initial appearance before the Court.

The government knows that the Court will listen carefully to whatever statements, if any, McNair might choose to make on his own behalf at sentencing.  The government predicts that McNair will make no statements, will make meaningless statements, or will make empty and vapid statements that will enable the Court to appreciate his recalcitrant and calculating manner.  This is not a defendant who is sorry for his criminal conduct or its impact on others.  He is, instead, sorry only that he was caught, that his criminal conduct was revealed, and that he has been held

accountable for that conduct.

    E.    <u>Danger to Society</u>

Against the backdrop of his criminal record, McNair's conduct as exposed in this case is indicative of a dangerous criminal disposition and a disregard for the welfare and property of others. Through his voluntary participation in the robberies of John Crawford, DeLonta Jackson, and Corey Rious, and the carjackings of Crawford and Jackson, McNair demonstrated a willingness to involve himself in a planned and violent criminal venture. In the government's view, McNair is a danger to society. The community deserves to be protected from any future harm that he might cause for as long as the law permits.

IV.  <u>Consecutive Prison Time</u>

With credit for time served, which dates back to January 5, 2003, McNair currently is serving a combined seven year sentence as a result of felony convictions in both Montgomery County and Prince George's County, Maryland. The government anticipates that through his counsel, McNair will ask the Court to run some share of the prison time it imposes in this case concurrent to the Maryland sentences that McNair currently is serving. The government further anticipates that McNair will point especially to his arrest in Montgomery County, Maryland, on January 5, 2003, and argue that inasmuch as he was caught in the blue Lincoln Town Car – one of the cars he helped carjack on January 2, 2003 – he already has been punished for conduct pertaining to the offense that was the subject of his guilty plea.

The Court should be unmoved by such arguments, which amount to disguised requests for leniency. McNair's guilty plea in his Montgomery County case was for his possession of a pistol and cocaine on January 5, 2003. The sentence that he received, accordingly, was for those discrete offenses. The robberies and carjackings that McNair helped commit three days earlier were separate criminal events. They were not charged until the indictment in this case was returned on May 9, 2006. Indeed, they were not known to law enforcement on January 5, 2003, given that the victims

-13-

of McNair's conduct either filed misleading police reports or no police reports at all.  If anything, McNair's possession of a gun, PCP, and cocaine three days after the robberies and carjackings at issue in this case bespeak a dangerous criminal nature that the government, by this memorandum, is trying to convey to the Court.

Concurrent prison time also would not be in keeping with the Sentencing Guidelines.  The governing provision is Section 5G1.3(c) of the Sentencing Guidelines, which states that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  Application Note 3(c), in pertinent part, states that Section 5G1.3(c) applies "in cases in which the defendant was on . . . state probation . . . at the time of the instant offense and has had such probation . . . revoked."  In such circumstances, "the [United States Sentencing] Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."  See USSG §5G1.3(c), comment. (n. 3(c)).  See also USSG §7B1.3(f), comment. (n. 4).

The Sentencing Guidelines thus contemplate consecutive prison time for a defendant who commits an offense while on probation, parole, or supervised release.  That is precisely the circumstance here.  McNair was convicted of possession with intent to distribute cocaine, among other crimes, in the Circuit Court for Prince George's County, Maryland, in CT 01-0080X, on June 29, 2001.  Following his release from prison on November 18, 2002, McNair was placed on probation for five years.  He was on that probation when, on January 2, 2003, he was involved in the carjacking conspiracy at issue in this case, and his probation in the Prince George's County case was revoked on April 23, 2004.  On these facts, the Sentencing Guidelines call for consecutive prison time, and the government urges the Court to impose such a sentence.

-14-

V.  Conclusion

In a city wracked by violence, and increasingly concerned about gang violence, the sentencing hearing in this case provides the Court with an opportunity.  That opportunity is for the Court, through the public imposition of sentence, in words and in numbers, to condemn the criminal behavior engaged in by Erick McNair.  By his criminal conduct, and for the other reasons set forth in this memorandum, McNair has invited the maximum punishment permitted by law.  The Court should accept this invitation and impose sentence accordingly.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By:    _____
        MICHAEL D. BRITTIN
        RACHEL CARLSON LIEBER
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 307-0106 (MDB)
        (202) 353-8055 (RCL)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the _____ day of December, 2006, a copy of the foregoing

Memorandum in Aid of Sentencing was served, via first class mail, upon counsel for Erick C.

McNair, Brian K. McDaniel, Esq., 1211 Connecticut Avenue, N.W. , Suite 506, Washington,

D.C. 20036.

_____
Michael D. Brittin
Assistant United States Attorney